# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSE TURNER and JAMES W. WILLIAMS, <br><br>       Plaintiffs, <br><br> v. <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <br><br> and <br><br> CHARLES WALLINGTON, individually and in his official capacity, <br><br>       Defendants. | Civil Action No. 09-812 (CKK) |

## MEMORANDUM OPINION
(March 31, 2010)

Plaintiffs, Rose Turner and her husband, James W. Williams, have filed the above-captioned case against Defendants, the Washington Metropolitan Area Transit Authority ("WMATA") and Charles Wallington. Turner alleges that she was discriminated against on the basis of her sex (female) and retaliated against for her participation in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In addition, she asserts claims for intentional infliction of emotional distress and intentional infliction of mental distress against both Defendants as well as claims for negligent training, supervision and retention against WMATA only. Her husband and co-Plaintiff, Williams, asserts a claim for loss of consortium against both Defendants.

Presently before the Court is Defendant WMATA's [3] Motion to Dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), in which WMATA moves for dismissal of Plaintiffs' common law tort claims as well as their claims for punitive damages as alleged against WMATA.[1]  Specifically, WMATA argues that it is immune from suit for its decisions relating to the training, supervision and retention of its employees, such that this Court lacks subject matter jurisdiction to entertain Plaintiffs' common law tort claims to the extent they are based on WMATA's personnel decisions.  Accordingly, WMATA urges that the Court dismiss for lack of subject matter jurisdiction Turner's claims for negligent training/supervision, negligent retention, intentional infliction of emotional distress, and intentional infliction of mental distress, as WMATA asserts that each of these claims seeks to challenge its discretionary decisions regarding training, supervision and retention.  In addition, WMATA contends that if the Court dismisses Turner's common law tort claims thereby leaving only her Title VII claims, it must also dismiss her husband's claim for loss of consortium as he cannot assert a derivative tort claim under Title VII.  Finally, WMATA asserts that it is also immune from Plaintiffs' claims for punitive damages and therefore moves for dismissal of those claims for lack of subject matter jurisdiction.

Plaintiffs oppose WMATA's motion insofar as it seeks dismissal of their common law tort claims.  They do not, however, oppose the motion with respect to their punitive damage claims, conceding that such claims must be dismissed.  *See* Pls.' Opp'n, Docket No. [6], at 6

---

[1]  WMATA does not move for dismissal of Plaintiffs' substantive claims of discrimination and retaliation in violation of Title VII (except to the extent Plaintiffs seek punitive damages for such alleged violations).  Accordingly, Plaintiffs' Title VII claims are not at issue in this Memorandum Opinion.  In addition, the Court notes that Defendant Wallington is represented by separate counsel and has not joined Defendant WMATA's motion; as such, Plaintiffs' claims against Wallington are not at issue either.

("Plaintiff concedes to the striking of Plaintiff's claim for punitive damages."). Accordingly, as Plaintiffs concede WMATA's motion to the extent it moves for dismissal of their claims for punitive damages, the Court shall GRANT Defendant WMATA's [3] Motion to Dismiss as conceded with respect to Plaintiffs' punitive damages claims. This Memorandum Opinion therefore focuses solely on WMATA's arguments that it is immune from Plaintiffs' common law tort claims. The Court has conducted a searching review of WMATA's motion and the parties' responsive briefing, the relevant statutes, regulations, and case law as well as the record of this case as a whole. For the reasons that follow, the Court shall GRANT WMATA's Motion to Dismiss with respect to Turner's claims for negligent training, supervision and retention and shall therefore DISMISS Counts IV and V in the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The Court, however, shall DENY WITHOUT PREJUDICE WMATA's Motion to Dismiss with respect to Counts II and III of the Complaint. In addition, the Court shall GRANT WMATA's [3] Motion to Dismiss with respect to Count VII insofar as the claim is alleged against WMATA and is premised upon WMATA's training, supervision and retention decisions, but shall DENY WITHOUT PREJUDICE the motion insofar is it is premised on Turner's common law tort claims in Counts II and III, which remain extant. WMATA may file a renewed motion to dismiss as to Counts II, III and VII only pursuant to the schedule set forth in the accompanying Order.

## I. BACKGROUND

### A. Factual Background

WMATA is an agency created by an interstate compact as authorized by Congress through Pub. L. No. 89-774 and is an instrumentality of Maryland, Virginia, and the District of

Columbia. *See* D.C. Code § 9-1107.01 *et seq.* As set forth in the Complaint, Plaintiff Rose Turner is a former employee of WMATA, and she is joined as Plaintiff in this action by her husband, James W. Williams. Complaint, Docket No. [1], ¶ 4. Turner began her employment with WMATA in September of 2003 as a Maintenance Custodian. *Id.* ¶ 8. She was subsequently promoted to Acting Custodial Maintenance Supervisor in March of 2007, in which position she worked until her alleged constructive discharge from the agency on October 16, 2007. *Id.* Upon her promotion to the position of Acting Custodial Maintenance Supervisor, Defendant Wallington, then-Assistant Superintendent for the Custodian Maintenance Department on the Redline, became Turner's immediate supervisor. *Id.* ¶ 10.

As set forth in the Complaint, Turner alleges that beginning in April 2007 and continuing until her separation from WMATA on October 16, 2007, Wallington made inappropriate sexual comments and inappropriate sexual advances towards her. *Id.* ¶ 11. Specifically, Turner alleges that in April or May of 2007, Wallington approached her while she was sitting at her work station and proceeded to grab her breast against her will and without her permission. *Id.* ¶ 13. Turner further alleges that at or around the same time period, Wallington asked her to "sit on his face." *Id.* ¶ 14. In addition, Turner alleges that at some unspecified time after April 2007, Wallington grabbed Plaintiff by the mouth and placed his mouth over hers against her will and without her permission. *Id.* ¶ 12.

Turner states that immediately after each incident she addressed Wallington about his inappropriate behavior; she made clear that he was not to touch her in that fashion and threatened to report his actions. *Id.* ¶ 16. Turner alleges, however, that Wallington's actions continued unabated. *Id.* ¶ 17. According to Turner, Wallington eventually began to verbally threaten her,

including making threats to deny her promotions and to "blackball" her if she reported his conduct. *Id.* ¶ 18. He also allegedly began making unwanted telephone calls to Turner that consisted of "harassment and threats" and also made "unwanted comments" to her. *Id.* ¶¶ 19, 22. In addition, Turner states that on or about May 2007, Wallington refused her request to be off from work on the day of her birthday and instead required her to work more than 19 straight hours; Turner alleges that Wallington refused her request for leave because she refused his advances and objected to his conduct. *Id.* ¶ 21. Thereafter, Turner alleges that she continued to be subjected to "constant telephone calls and threats" from Wallington. *Id.* ¶ 24. According to Turner, this culminated in her constructive discharge from WMATA on October 16, 2007, as a result of the "stress associated with her hostile work environment, threats and sexual overtones." *Id.* ¶ 25.

Plaintiffs indicate that at some time in "late October 2007," Turner reported Wallington's actions to WMATA's Office of Civil Rights as well as to WMATA's Employee Assistance Program; no specific date is cited. *Id.* ¶ 23. Although no specific date is provided in the Complaint, even drawing all favorable inferences in Plaintiffs' favor, it appears from Plaintiffs' own allegations that Turner did not officially report Wallington's alleged conduct to WMATA until after she left her position on October 16, 2007; in addition, while Plaintiffs indicate that Turner complained to Wallington himself about his conduct and threatened to report him, there is no allegation that she in fact reported Wallington or that she advised anyone at WMATA about his conduct until she filed an official complaint in "late October 2007" — *i.e.*, after she asserts that she was constructively discharged.

Separate from the specific allegations that Wallington engaged in harassing and

discriminatory behavior towards Turner during the period from April to October of 2007, Plaintiffs allege generally that Wallington "had done prior acts of sexual assault and harassment before" and that "he was reported [] to WMATA" for such conduct. *Id.* ¶ 14. No further details regarding these alleged prior incidents are provided. *See generally* Compl. Plaintiffs suggest, however, that these prior incidents occurred before Wallington was promoted, such that WMATA was aware of Wallington's alleged "past history of sexual harassment" at the time it promoted Wallington to the position of Assistant Superintendent for the Custodian Maintenance Department. *See id.* ¶ 26. Nonetheless, the Court notes that the Complaint is silent as to when Wallington was promoted, although it is self-evident that he was promoted to the Assistant Superintendent position at some point prior to Turner's promotion in March of 2007. *See generally* Compl. The Complaint is similarly silent as to when Wallington allegedly engaged in unspecified "prior acts of sexual assault and harassment" or as to when and how WMATA would have been notified of such conduct. *See generally* Compl.

B.    *Procedural Background*

Plaintiffs filed the above-captioned action on May 4, 2009. *See* Compl. Plaintiffs' Complaint, although filed by counsel, is by no means a model of artful pleading. As indicated above, the factual allegations are generally vague and provide little detail. In addition, the underlying basis for Plaintiffs' legal claims is not always transparent, as is discussed in more detail below. Nonetheless, as the Court understands Plaintiffs' allegations, they assert the following seven causes of action:

- <u>Count I</u>: Alleges discrimination on the basis of sex (female) in violation of Title VII and is asserted by Turner against both Defendants. *Id.* ¶¶ 28-47.

- <u>Count II</u>: Alleges intentional infliction of emotional distress and is asserted by Turner against both Defendants. *Id.* ¶¶ 48-57.

- <u>Count III</u>: Alleges intentional infliction of mental distress and is asserted by Turner against both Defendants. *Id.* ¶¶ 58-60.

- <u>Count IV</u>: Alleges negligent failure to properly train and supervise and is asserted by Turner against WMATA only. *Id.* ¶¶ 61-70.

- <u>Count V</u>: Alleges negligent retention and is asserted by Turner against WMATA only. *Id.* ¶¶ 71-75.

- <u>Count VI</u>: Alleges retaliation in violation of Title VII[2] and is asserted by Turner against both WMATA and Wallington. *Id.* ¶¶ 76-78.

- <u>Count VII</u>: Alleged loss of consortium and is asserted by Williams, Turner's husband, against both Defendants. *Id.* ¶¶ 79-81.

Presently pending before the Court is Defendant WMATA's Motion to Dismiss. *See* Def.'s MTD, Docket No. [3]. As indicated above, WMATA has moved for dismissal of Plaintiffs' common law tort claims and their claims for punitive damages as alleged against WMATA. Because Plaintiffs have conceded WMATA's Motion to Dismiss with respect to their

---

[2] Although Count VI does not specify that Plaintiffs' claim for retaliation is asserted in violation of Title VII, the Court assumes that Plaintiffs intended to assert this claim under Title VII based on statements in their Complaint and present briefing. *See* Complaint ¶ 3 (referring to "section 704(a) of Title VII," which sets forth Title VII anti-retaliation provision and is codified at 42 U.S.C. § 200e-3(a)); Pls.' Opp'n at 1 (describing the lawsuit as "an action under Title VII of the Civil Rights Act of 1964"). While the Complaint also briefly references the District of Columbia Human Rights Act ("DCHRA"), *see* Compl. ¶ 3, "[i]t is well established that WMATA is not subject to the DCHRA because WMATA is an interstate compact agency and instrumentality of three separate jurisdictions." *Taylor v. WMATA*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000), *aff'd* 2001 WL 311216 (D.C. Cir. Mar. 26, 2001); *see also Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) (dismissing plaintiff's DCHRA claims against WMATA because "pursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States"). Accordingly, the Court assumes that Plaintiffs' reference to the DCHRA was in error and that Turner's claims for discrimination and retaliation are brought solely under Title VII.

claims for punitive damages, the Court addresses herein only WMATA's arguments with respect to Plaintiffs' common law tort claims asserted against WMATA — namely, Count II (intentional infliction of emotional distress), Count III (intentional infliction of mental distress), Count IV (negligent failure to properly train and supervise), Count V (negligent retention), and Count VII (loss of consortium). Plaintiffs have filed an Opposition to WMATA's Motion to Dismiss, *see* Pls.' Opp'n, Docket No. [6], and WMATA has filed a Reply, *see* Def.'s Reply, Docket No. [8]. Accordingly, WMATA's [3] Motion to Dismiss is fully briefed and ripe for the Court's review and resolution.

## II.  LEGAL STANDARDS

As indicated above, WMATA has moved for dismissal of Turner's common law tort claims for lack of subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1) and has moved for dismissal of her husband's tort loss of consortium claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The applicable legal standards for motions to dismiss under these rules are as follows.

### A.     *Federal Rule of Civil Procedure 12(b)(1)*

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833, n. 4 (D.C. Cir. 1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff

should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record.'") (internal citations omitted). However, "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350).

B.      *Federal Rule of Civil Procedure 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

### III. DISCUSSION

As explained above, WMATA has moved to dismiss Plaintiffs' common law tort claims, including both those asserted by Turner in Counts II through VI as well as her husband's claim for loss of consortium asserted in Count VII. Specifically, WMATA argues that its decisions relating to the training, supervision and retention of its employees are immune from judicial review, such that the Court lacks subject matter jurisdiction to review Turner's claims for negligent training/supervision, negligent retention, intentional infliction of emotional distress and intentional infliction of mental distress, as each seeks to challenge WMATA's personnel decisions. In addition, WMATA contends that, because Turner's common law tort claims fail thereby leaving only her Title VII claims, her husband's loss of consortium claim must be dismissed as he cannot assert a derivative tort claim under Title VII.

*WMATA's Immunity Under the Compact*

WMATA was created as the result of a compact signed by Maryland, Virginia, and the District of Columbia and consented to by Congress (the "Compact"), and is therefore an instrumentality of Maryland, Virginia, and the District of Columbia.  *See* D.C. Code § 9-1107.01 *et seq.*; *see also Burkhart v. WMATA*, 112 F.3d 1208, 1216 (D.C. Cir. 1997). In creating WMATA, "the signatories to the Compact, together with Congress, [] conferred their respective sovereign immunities (including immunity under the Eleventh Amendment) on WMATA;" they then proceeded, however, to "partially waive[] those immunities in Section 80 of the Compact" permitting suits for torts "committed in the course of any proprietary function."  *Saunders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987) (citing *Morris v. WMATA*, 781 F.2d 218 (D.C. Cir. 1986)).  Specifically, Section 80 of the WMATA Compact provides that "[t]he Authority shall be liable . . . for its torts and those of its Directors, officers, employees and agents committed in the course of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function."  D.C. Code § 9-1107.01; *see also Burkhart*, 112 F.3d at 1216.

The D.C. Circuit has held that the "question [of] whether the function in question is 'governmental' or 'proprietary' under Section 80 is one of federal law," *Saunders*, 819 F.2d at 1154, and has "developed two alternative tests for identifying 'governmental' functions under the WMATA Compact," *Burkhart*, 112 F.3d at 1216 (citing *Dant v. District of Columbia*, 829 F.2d 69 (D.C. Cir. 1987)).  First, "[i]f an activity is a 'quintessential[ ] governmental' function, such as 'police activit[y],' it is within the scope of WMATA's sovereign immunity."  *Id.*  "For those activities that are not quintessential governmental functions, immunity will depend on whether

the activity is 'discretionary' or 'ministerial.'" *Id.* "Only those activities considered 'discretionary' are shielded by sovereign immunity." *Id.*

As it is generally "difficult to distinguish between public and private sector functions with any precision beyond obviously public activities like law enforcement," the immunity question often turns on this latter test — *i.e.,* determining whether the challenged activity is discretionary or ministerial in nature. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (internal citations omitted). The D.C. Circuit has indicated that courts, in analyzing whether an action is discretionary and therefore immune under the Compact, should look to and apply federal case law interpreting the discretionary function exception under the Federal Tort Claims Act, which employs the same discretionary/ministerial dichotomy. *See id.*; *see also Saunders*, 819 F.2d at 1155 (concluding that in "granting immunity from tort actions to WMATA's 'governmental actions,' the Compact seems to use to have accepted" the federal concept of a government function as applied to the FTCA's discretionary function exception, thereby creating a "strong inference that 'governmental function tort suits are to be governed by federal law — as that law has been stated in the Tort Claims Act"). Accordingly, a court must first "ask whether any 'statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *Beebe*, 129 F.3d at 1287 (quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)). "If no course of action is prescribed, we then determine whether the exercise of discretion is 'grounded in social, economic, or political goals.'" *Id.* (quoting *Cope*, 45 F.3d at 448). "If so grounded, the activity is 'governmental,' thus falling within section 80's retention of sovereign immunity." *Id.*

As WMATA emphasizes in its Motion to Dismiss, the D.C. Circuit has previously held

that, under this test, "decisions concerning the hiring, training and supervising of WMATA

employees are discretionary in nature, and thus immune from judicial review." *Burkhart*, 112

F.3d at 1217. Applying this principle, the D.C. Circuit held in *Burkhart* that WMATA was

immune from claims of negligent hiring, training and supervision based on allegations that its

employee, a bus operator, had physically assaulted a passenger. *Id.* at 1217-18. The Ciruit court

found that there was no statute, regulation or policy specifically prescribing WMATA's decisions

with respect to the hiring, training, and supervising of employees, as required under the first

prong of the test outlined above. *Id.* To the contrary, the D.C. Circuit found that:

> the WMATA compact confers upon WMATA broad power to "[c]reate and abolish
> . . . employments" and "provide for the qualification, appointment, [and] removal .
> . . of its . . . employees without regard to the laws of any of the signatories,"
> "[e]stablish, in its discretion, a personnel system based on merit and fitness,"and
> "[c]ontrol and regulate . . . the service to be rendered." These provisions hardly
> constrain WMATA's determination of whom it will employ or how it will train and
> supervise such employees.

*Id.* (internal citations omitted). In addition, the D.C. Circuit concluded that, under the second

prong of the test, the

> hiring, training, and supervision choices that WMATA faces are choices "susceptible
> to policy judgment." The hiring decisions of a public entity require consideration of
> numerous factors, including budgetary constraints, public perception, economic
> conditions, individual backgrounds, office diversity, experience and employer
> intuition. Similarly, supervision decisions involve a complex balancing of budgetary
> considerations, employee privacy rights, and the need to ensure public safety. The
> extent of training with which to provide employees requires consideration of fiscal
> constraints, public safety, the complexity of the task involved, the degree of harm a
> wayward employee might cause, and the extent to which employees have deviated
> from accepted norms in the past. Such decisions are surely among those involving
> the exercise of political, social, or economic judgment.

*Id.* (internal citations and quotation marks omitted). As such, the court held that "WMATA is []

immune from suit for negligence in the performance of such functions." *Id.*

The D.C. Circuit later re-affirmed its holding that WMATA's decisions relating to the hiring, training and supervision of its employees are generally immune from suit in its decision in *Beebe*.  In that case, the plaintiff, a former employee of WMATA, alleged several tort claims— including a claim for intentional infliction of emotional harm — against WMATA based upon his supervisor's decision to abolish the plaintiff's job, replace it with a new position, and appoint another individual to that new position as part of a reorganization of his department.  *Beebe*, 129 F.3d at 1286.  While recognizing that "not every action connected in some way to an employment decision amounts to a discretionary function," the Court of Appeals concluded that "all actions challenged by [plaintiff] involved a large measure of choice, and we perceive no distinction between the discretion here and the hiring, training, and supervision of bus operators at issue in *Burkhart*."  *Id.* at 1288.  Accordingly, the D.C. Circuit affirmed the lower court's dismissal of the plaintiff's tort claims (including his claim for intentional infliction of emotional distress) that were based upon his supervisor's decisions regarding hiring and the reorganization of the department, finding that WMATA was immune from suit for the challenged conduct.  *Id. See also Ferguson v. Local 689*, 626 F. Supp. 2d 55, 62 (D.D.C. 2009) (finding that WMATA was immune from claim for intentional infliction of emotional distress based on decision to discharge the plaintiff).

     B.     *Turner's Claims for Negligent Training, Supervision and Retention*

Relying on the D.C. Circuit's decisions in *Burkhart* and *Beebe*, WMATA urges that Turner's claims for negligent training, supervision and retention, as set forth in Counts IV and V respectively, must be dismissed to the extent they challenge WMATA's decisions regarding training, supervision and retention.  Plaintiffs for their part do not dispute that WMATA's

decisions regarding training, supervision and retention are generally immune from suit. Pls.' Opp'n at 4. They argue, however, that WMATA is not immune from Turner's claims for negligent training, supervision and retention in this case because her claims are based on allegations that WMATA failed to act once notified of illegal activity; Plaintiffs therefore urge that the Court has jurisdiction to entertain Plaintiffs' claims pursuant to the Eighth Circuit's decision in *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995).

In *Tonelli*, the plaintiffs alleged that employees of the United States Postal Service had been illegally opening and accessing their private mail. 60 F.3d at 494. Plaintiffs subsequently reported the problem to a postal employee, who referred them to the postmaster. *Id.* Plaintiffs' immediate efforts to contact the postmaster were unsuccessful, and they did not meet with him until several months after their initial complaint. *Id.* At that time, the postmaster arranged for an investigation into their complaint, which resulted in the arrest of a postal employee for opening and accessing plaintiffs' mail. *Id.* Plaintiffs subsequently filed suit against the United States under the FTCA asserting claims for, *inter alia*, negligent supervision and retention. *Id.* The Eighth Circuit on appeal rejected the Government's contention that it was immune from suit against plaintiffs' claims pursuant to the FTCA's discretionary function exception, finding that the challenged decisions were not grounded in policy considerations as required under the second prong of the discretionary function exception test. *Id.* at 496. The court recognized that "[i]ssues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception," but distinguished plaintiffs' claims — which were based on "allegations that the post office failed to act when it had notice of illegal behavior" — from the type of personnel decisions that are immune under the FTCA. *Id.*

Specifically, the Eighth Circuit held that plaintiffs' claim that the government "[f]ail[ed] to act after notice of illegal action does not represent a choice based on plausible policy considerations." *Id.* Accordingly, it failed the second prong of the test outlined above for determining whether a decision is discretionary and therefore immune from suit. *Id.*

Plaintiffs' reliance on *Tonelli*, however, is misplaced as it is factually inapposite to the allegations at issue in this case. As is apparent from the Court's summary above, the plaintiffs in *Tonelli* complained to a postal employee about specific, ongoing and contemporaneous illegal conduct that was being taken by an employee against plaintiffs themselves, and the Eighth Circuit found that in such a situation, allegations that the Postal Service wholly failed once notified to address the illegal activity underlying plaintiffs' complaint were not immune under the FTCA. By contrast, the allegations in the extant Complaint indicate that Turner did not notify WMATA of Wallington's allegedly illegal conduct until ***after*** she left her position at WMATA. Accordingly, Plaintiffs are not alleging, as in *Tonelli*, that WMATA failed to act despite specific notice by Plaintiffs that an employee was currently engaging in illegal conduct. In other words, unlike in *Tonelli*, there is no allegation that WMATA was aware during the relevant period of time between April of 2007 and October of 2007 that Wallington was allegedly engaging in harassing and discriminatory conduct in violation of Title VII, but nonetheless failed to act. Rather, Plaintiffs complain that WMATA negligently failed to take action and negligently promoted Wallington before she was transferred to his department despite having been allegedly informed at some unspecified time in the past that Wallington had engaged in unspecified harassing conduct. Accordingly, even assuming the Court were to adopt *Tonelli*'s holding that an agency is not immune from allegations that it failed to act when placed on notice

of specific and continuing illegal conduct by an employee, that is simply not the case here based on Plaintiffs' own allegations.

Plaintiffs have proffered no other reason why the D.C. Circuit's decisions in *Burkhart* and *Beebe* should not control nor can the Court perceive any distinguishing factors in this case that would take Plaintiffs' allegations outside of the D.C. Circuit's precedent holding that WMATA's decisions regarding training, supervision and retention are immune from judicial review. Plaintiffs have ***not*** alleged in their Complaint or argued in their present briefing that any statute, regulation or policy that specifies particular training, supervision or retention actions WMATA was required to — but did not — take in the circumstances alleged. Accordingly, WMATA's challenged decisions were discretionary. Moreover, the Court finds that, under *Burkhart* and *Beebe*, WMATA's decisions regarding training, supervision and retention are grounded in social, economic and political concerns and are therefore immune from judicial review. That these decisions were made with respect to an individual who had — at some unspecified point in the past — allegedly been reported for engaging in unspecified discriminatory conduct does not remove the inherently policy-based concerns implicated by WMATA's training, supervision and retention decisions. As the D.C. Circuit found in *Burkhart*, "supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety" and "[t]he extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." *Burkhart*, 112 F.3d at 1217. Similarly, like decisions relating to hiring, the decision whether to promote and/or retain an employee "require consideration of

numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition." *Id.* The Court therefore finds that, on the basis of Plaintiffs' allegations in the Complaint, WMATA is immune from Turner's claims for negligent training, supervision and retention. Accordingly, WMATA's [3] Motion to Dismiss is GRANTED with respect to Turner's claims for negligent training, supervision and retention, and Counts IV and V shall be DISMISSED for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

      C.     *Turner's Claims for Intentional Infliction of Distress*

The Court turns then to Turner's claims for intentional infliction of emotional/mental distress, as set forth in Counts II and III of the Complaint. In its opening Motion to Dismiss, WMATA argued that all of Turner's common law claims — including both her negligent training, supervision and retention claims as well as her claims for intentional infliction of emotional/mental distress — were predicated on the same training, supervision and retention decisions and that WMATA was therefore immune from all of Turner's common law tort claims for the same reasons discussed above. Plaintiffs' Opposition, however, addresses the two categories of claims separately. With respect to Turner's claims for intentional infliction of emotional/mental distress, Plaintiffs argue that — unlike her claims for negligent training, supervision and retention — such claims may proceed because WMATA is liable under the principle of *respondeat superior* for Wallington's alleged conduct and WMATA is not entitled to immunity for such "extremely inappropriate behavior." *See* Pls.' Opp'n at 2-3. As presented by Plaintiffs in their opposition briefing, then, Turner's claims for intentional infliction of emotional and mental distress are predicated only upon allegations that WMATA is liable for Wallington's

harassing and discriminatory conduct under the doctrine of *respondeat superior.*

Having reviewed Plaintiffs' opposition briefing, which for the first time makes clear that Turner's claims for intentional infliction of emotional/mental distress are premised on *respondeat superior* liability, WMATA argues in reply that Turner's claims nonetheless fail because Wallington's alleged conduct is outside the scope of employment. As such, WMATA cannot legally be held liable for his behavior under the principle of *respondeat superior*. Def.'s Reply at 2-4. To the extent WMATA is correct, this argument is dispositive of Turner's claims. The Court notes, however, that it was — through no fault of WMATA's — raised for the first time in the Reply in response to Plaintiffs' Opposition. Accordingly, Plaintiffs have not yet had a chance to respond, and the Court declines to make a final decision without the benefit of full briefing by the parties. The Court shall therefore DENY WITHOUT PREJUDICE WMATA's [3] Motion to Dismiss with respect to Counts II and III of the Complaint and shall permit WMATA an opportunity to file a renewed motion to dismiss as to those claims only pursuant to the schedule set forth in the accompanying Order.

> D.    *Williams' Claim for Loss of Consortium*

The Court is therefore left with WMATA's arguments for dismissal of Williams' loss of consortium claim asserted in Count VII of the Complaint. As an initial matter, it is not entirely clear from the Complaint what allegations specifically underlie Williams' claim. Nonetheless, to the extent his claim for loss of consortium is predicated upon his wife's claims for negligent training, supervision and retention, which the Court has dismissed above for lack of subject matter jurisdiction, Williams' claim for loss of consortium also fails. Accordingly, the Court shall GRANT WMATA's [3] Motion to Dismiss with respect to Count VII insofar as it is

premised upon WMATA's training, supervision and retention decisions.

To the extent, however, that William's claim is predicated upon the allegations underlying Turner's intentional infliction of emotional/mental distress claims, such claims remain extant at this time given the Court's decision above denying without prejudice WMATA's Motion to Dismiss Counts II and III of the Complaint. WMATA has not, therefore, demonstrated that Williams' loss of consortium claim must fail insofar as it is premised on Turner's common law tort claims in Counts II and III. To the extent, however, that WMATA files a renewed motion to dismiss as to those claims, it may also re-raise its arguments with respect to Count VII of the Complaint, if it deems it appropriate. Accordingly, the Court shall DENY WITHOUT PREJUDICE WMATA's [3] Motion to Dismiss with respect to Count VII insofar as it is based on his wife's allegations in Counts II and III of the Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS-IN-PART and DENIES-IN-PART WMATA's [3] Motion to Dismiss. Specifically, the motion is GRANTED as conceded with respect to Plaintiffs' punitive damages claims and is also GRANTED with respect to Turner's claims for negligent training, supervision and retention. Plaintiffs' claims for punitive damages as well as Counts IV and V in the Complaint are therefore DISMISSED for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The motion, however, is DENIED WITHOUT PREJUDICE with respect to Counts II and III of the Complaint. In addition, the Court GRANTS

the motion with respect to Count VII insofar as the claim is alleged against WMATA and is

premised upon WMATA's training, supervision and retention decisions, but DENIES

WITHOUT PREJUDICE the motion insofar is it is premised on Turner's common law tort

claims in Counts II and III, which remain extant. WMATA may file a renewed motion to dismiss

as to Counts II, III and VII only pursuant to the schedule set forth in the accompanying Order.

Date: March 31, 2010.

                                                   _/s/_____

                                                **COLLEEN KOLLAR-KOTELLY**
                                                United States District Judge