UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROSE TURNER**, *et al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**, *et al.*,<br><br>**Defendants**. | Civil Action No. 09-812 (JEB) |

**MEMORANDUM OPINION**

On Nov. 21, 2011, the Court issued a Memorandum Opinion and Order that granted Defendants Charles Wallington's and Washington Metropolitan Area Transit Authority's Motions for Summary Judgment with the exception of Count II, intentional infliction of emotional distress (IIED). The Court then held a status conference on Nov. 30, in which all parties discussed the remaining vicarious-liability question relating to WMATA's defense to Plaintiff's IIED claim. All agreed that this raised legal issues that had not been sufficiently briefed in the first round. The Court, accordingly, permitted WMATA and Plaintiff to submit additional briefs, and they have done so under the guise of a Motion for Reconsideration. The Court will now grant WMATA's Motion and dismiss Count II against it, leaving Wallington as the sole Defendant in the case.

I.   Scope of Employment

In its Memorandum Opinion, the Court noted that WMATA had not asserted a scope-of-employment defense; in other words, it had not argued that Wallington's actions of grabbing Plaintiff's breast and trying to kiss her were outside the scope of his employment with WMATA,

1

thus barring vicarious liability for IIED.  Id. at 21.  It has done so now in considerably more detail than the brief references in its earlier pleadings.  See Mot. at 1-5.

WMATA first maintains that Plaintiff herself has conceded that the breast-grabbing and attempted kissing did not occur within Wallington's scope of employment.  This is correct.  In discussing the immunity issue raised in WMATA's original Motion for Summary Judgment, Plaintiff argued, "WMATA cannot allege immunity when the actions by the official (Wallington) were not within the scope of his employment."  Opp. (ECF No. 26) at 15 (emphasis added).  In fact, in opposing the current Motion, Plaintiff never argues that Wallington's actions took place within the scope of his employment.  See Opp. (ECF No. 33) at 2-4.

This concession is wise because the law of the District of Columbia is against Plaintiff. See, e.g., Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415, 427 (D.C. 2006) (affirming directed verdict for employer of two deliverymen who stole from a woman to whom they delivered a washing machine and holding that "'the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable.  The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends.'") (quoting Axman v. Washington Gaslight Co., 38 App. D.C. 150, 158 (1912) (emphasis supplied by Schecter deleted));  Boykin v. District of Columbia, 484 A.2d 560, 562 (D.C. 1984) (where coordinator of deaf/blind program at D.C. public school sexually assaulted deaf, blind, and mute student during school day, Court affirmed grant of summary judgment to District  because assault not within scope of instructor's employment; assault was "not a direct outgrowth of [the instructor's] instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives"; "assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the

accomplishment of [his] independent, malicious, mischievous and selfish purposes"); Grimes v. B. F. Saul Co., 60 App. D.C. 47 (1931) (holding owner of apartment building not liable as matter of law for attempted rape on tenant by employee hired to inspect building for repairs because act not done in furtherance of employer's business, but rather as an independent trespass of agent); Doe v. Sipper, 2011 WL 5252622, at *3-5 (D.D.C. Nov. 4, 2011) (rape by employee of subordinate on business trip not within scope of employment).

    II.    Aided by Agency Relation

Instead of making a scope-of-employment argument, Plaintiff instead asserts that the Restatement (Second) of Agency offers her a means of establishing vicarious liability. Mot. at 2-4. Section 219(2)(d) states: "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the servant . . . was aided in accomplishing the tort by the existence of the agency relation." In Doe v. Sipper, this Court discussed § 219 at some length. Id. at *5-8. It noted, for example, that the District of Columbia Court of Appeals has never "addressed whether § 219(2)(d) applies to common-law claims in the District" and that some states have adopted it, while others have declined. Id. at *6.

The Court also discussed the case of Gary v. Long, 59 F.3d 1391 (D.C. Cir. 1995), a Title VII decision that represents the D.C. Circuit's only discussion of § 219(2)(d). See Doe at *6-7. The D.C. Circuit began by explaining, "In a sense, a supervisor is always 'aided in accomplishing the tort by the existence of the agency' because his responsibilities provide proximity to, and regular contact with, the victim." 59 F.3d at 1397. Yet, "[t]he commentary to the Restatement suggests that this [approach] embraces a narrower concept that holds the employer liable only if the tort was 'accomplished by an instrumentality, or through conduct associated with the agency status.'" Id. (citing Barnes v. Costle, 561 F.2d 983, 996 (D.C. Cir.

3

1997) (MacKinnon, J., concurring)). Examples include when a telegraph operator sends a false message or a store manager cheats a customer. Id. (citing Barnes, 561 F.2d at 996 (MacKinnon, J., concurring)).

The Court of Appeals in Gary considered the question of vicarious liability for a hostile-work-environment claim. It determined that the plaintiff there could not "avail herself of the exception described in section 219(d)(2) . . . [because] she could not have believed (and nor does she claim) that [the supervisor] was acting within the color of his authority." Id. at 1397-98. The court continued: "It is a general principle of agency law that '[i]f a person has information which would lead a reasonable man to believe that the agent is violating the orders of the principal or that the principal would not wish the agent to act under the circumstances known to the agent, he cannot subject the principal to liability.'" Id. at 1398 (quoting Restatement, § 166 cmt. a). In finding against the plaintiff, Gary ultimately "conclude[d] that an employer may not be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences." Id. at 1398 (citation omitted).

As this Court noted in Doe, Gary is a decision that preceded the Supreme Court's holdings in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Indus. v. Ellerth, 524 U.S. 742, 759 (1998). See Doe at *6. Those two cases, which analyzed vicarious liability for federal Title VII sexual-harassment claims, started by looking at § 219. See 524 U.S. at 802; 524 U.S. at 759. They ended, of course, by articulating the now-familiar defenses that an employer may use in defeating vicarious liability: when no tangible employment action has been

taken, an employer can overcome a hostile-work-environment claim by showing that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (b) "the plaintiff employee unreasonably failed to take advantage of [the employer's] preventative or corrective opportunities." <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher</u>, 524 U.S. at 807; <u>see</u> Mem. Op. at 9-14 (discussing <u>Faragher</u>/<u>Ellerth</u> defenses).

WMATA argues in its Motion for Reconsideration that, even if the Court were to believe the D.C.C.A. would adopt § 219(d)(2), it would then also permit the <u>Faragher</u>/<u>Ellerth</u> defenses. <u>See</u> Mot. at 2-6. This makes sense. It would certainly be anomalous for an employer that could defeat a Title VII or D.C. Human Rights Act sexual-harassment claim to then be subject to liability for the same conduct under IIED. This is largely because the analysis by the Supreme Court of the necessary limits on "aided-by-agency-relationship" liability applies equally to an IIED claim based on sexual harassment as to a Title VII claim. The Court thus holds that, even were the D.C.C.A. to adopt § 219(d)(2), the <u>Faragher</u>/<u>Ellerth</u> defenses would be available.

Here, the Court has already analyzed WMATA's <u>Faragher</u>/<u>Ellerth</u> defenses. In its original Memorandum Opinion, it found that WMATA has a "comprehensive sexual-harassment policy" and "took prompt action to remove Wallington as Turner's supervisor upon receiving her complaint and disciplined him at the conclusion of its investigation." Mem. Op. at 10. It also held that Plaintiff had unreasonably delayed in reporting the harassment. <u>Id.</u> at 10-11. Finally, the Court determined that the defenses were available because Plaintiff had not suffered a tangible employment action. <u>Id.</u> at 14. WMATA has thus, as a matter of law, proved its defenses to any IIED claim based on § 219, even assuming this represented D.C. law.

Finally, this case differs from <u>Doe</u>, in which the Court assumed, without deciding, that § 219(d)(2) applied. <u>Id.</u> at *6. First, unlike here, the employer never argued that the section did

not apply. Id. Second, also unlike this case, Doe was decided on a motion to dismiss, and there were many facts not yet fleshed out in discovery there, as the Court noted. Id. at *7. Finally, that case involved one rape, not repeated instances of sexual harassment, the latter of which more clearly corresponds to the facts in Faragher and Ellerth and which more logically permits the employment of these defenses.

      The Court, therefore, will issue a contemporaneous Order granting WMATA's Motion, dismissing it from the case, and setting a status for the remaining claim against Wallington.

                                      /s/ James E. Boasberg
                                      JAMES E. BOASBERG
                                      United States District Judge

Date:  Apr. 9, 2012